IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

STEVEN S. SILVEY                                                                                    PLAINTIFF

v.                                                      CIVIL ACTION NO. 1:20-CV-00044-GHD-DAS

MISSISSIPPI STATE UNIVERSITY                                                        DEFENDANT

**OPINION GRANTING DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

Presently before the Court is the Defendant's Motion for Partial Dismissal, citing Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the Eleventh Amendment [6], in response to the Plaintiff's claims of age discrimination, race discrimination, disability discrimination, and constitutional violations under 42 U.S.C. § 1983 [1]. Upon due consideration, for the reasons set forth herein, the Court hereby grants the Defendant's motion.

## I. Factual Background and Procedural History

The Plaintiff is a Florida resident [1, at ¶ 1]. The Defendant is a university residing in the state of Mississippi [*Id.*, at ¶ 2]. The Defendant employed the Plaintiff, who worked as a track coach [*Id.*, at ¶ 5]. The Plaintiff has worked as a track coach for over 36 years [*Id.*]. He began working for the Defendant in September 2013, and was employed by the Defendant for six years [*Id.*, at ¶ 6]. The Plaintiff alleges that he was harassed by Steve Dudley, who was then the head track and field coach [*Id.*]. On January 13, 2014, Dudley allegedly told the Plaintiff, "I know you are trying to recover from a recent surgery to your ankle, but it looks bad that you are parking in the handicapped parking spots outside of Humphrey Coliseum[1]" and "Stop parking in these spots outside the Hump entrance doors" [*Id.*, at ¶ 7]. On May 5, 2014, Dudley allegedly

---

[1] The Court takes judicial notice of the fact that Humphrey Coliseum is an on-campus basketball arena at Mississippi State University. *See Humphrey Coliseum*, Mississippi State University (last visited Mar. 16, 2021), https://spark.adobe.com/page/DCsiALdq80hip/.

told the Plaintiff again to stop parking in the handicapped parking spots, to which the Plaintiff responded, "I have the proper tag after having my ankle fused shut in 2012" [*Id.*, at ¶ 8]. Dudley allegedly replied, "I don't give a damn if you have a handicapped tag as you're a coach" [*Id.*]. He allegedly harassed the Plaintiff again on October 5, 2015, about parking in the handicapped parking spot [*Id.*]. On December 7, 2015, the Plaintiff injured his left knee when he fell on a wet floor while entering Humphrey Coliseum for a track and field staff meeting [*Id.*, at ¶ 9]. On January 11, 2016, Dudley allegedly again told the Plaintiff to stop parking in a handicapped parking spot, saying, "Other people are in need of these a lot more than you!" [*Id.*, at ¶ 10]. In June 2016, the Plaintiff allegedly told Dudley that he would not tolerate being harassed anymore about his medical issues, and informed him that he had his Mississippi handicapped tag and was on Medicare/disability due to issues with his right ankle [*Id.*, at ¶ 11]. On June 21, 2016, the Plaintiff delivered to the Defendant's Human Resources Department copies of his Medicare letter, disability letter, and handicapped parking tag, and told staff there that he wanted these documents placed on file to prove that the Defendant was on notice about his disability [*Id.*, at ¶ 12]. On May 12, 2017, the Plaintiff injured his right knee during the 2017 SEC Track and Field Championships at the University of South Carolina in Columbia, South Carolina [*Id.*, at ¶ 13]. He underwent right knee replacement surgery on June 30, 2017 [*Id.*, at ¶ 14]. The Plaintiff returned to work on July 7, 2017 [*Id.*]. In November 2017, the Plaintiff went through an operation on his left knee to address issues related to the fall sustained while entering Humphrey Coliseum on December 7, 2015 [*Id.*, at ¶ 9].

During his annual performance review in June 2018, Dudley told the Plaintiff that he had missed 17 days of work in July 2017, following his right knee replacement surgery [*Id.*, at ¶ 15]. The Plaintiff disputed this claim, and told Dudley that he was put off the road for 30 days during

2

July due to a SEC decision stemming from an unrelated matter, and that he only missed two days of work, thanks to the Fourth of July holiday [*Id.*]. On April 27, 2018, the Plaintiff reinjured his left knee after repeatedly walking up and down the stairs at the University of Pennsylvania's stadium in Philadelphia, Pennsylvania, while he was there for an athletic competition [*Id.*, at ¶ 16]. When he returned to Mississippi, the Plaintiff had an MRI at a local hospital [*Id.*]. On May 2, 2018, the MSU team doctor informed the Plaintiff that he needed partial knee replacement surgery [*Id.*]. The Plaintiff told the doctor that he could not have the surgery at that time because it was in the middle of the university's track and field season, and Dudley would probably fire him if he were to then have the surgery [*Id.*]. The Plaintiff later obtained a second opinion from Dr. Gabe Rulewicz [*Id.*, at ¶ 17]. The Plaintiff discovered on August 10, 2018, that he had a double meniscus tear; this was repaired on the same day [*Id.*]. He was subsequently informed that he needed a total knee replacement soon because he was "bone on bone" [*Id.*]. On November 13, 2018, Chris Woods, the interim head coach at the time, allegedly made a racist comment to the Plaintiff [*Id.*, at ¶ 21]. Woods is an African-American man in his early thirties [*Id.*, at ¶ 19]. On November 15, 2018, Woods allegedly stole four pieces of mail out of the Mississippi State University outgoing mail; one of these was personal to the Plaintiff, while the other three were for official track and field business [*Id.*, at ¶ 21]. The Plaintiff left these four pieces of mail, along with a two-page letter of explanation, with the secretary for the Defendant's athletic director on June 14, 2019.

    The Plaintiff had a total knee replacement surgery performed on his left knee on April 5, 2019, at the University of Alabama at Birmingham [*Id.*, at ¶ 18]. On June 14, 2019, the Plaintiff was informed that his contract with the Defendant would not be renewed for the 2019-20 school year, and that his final check would be dated July 15, 2019 [*Id.*]. At that time, the Plaintiff—

3

who is a white male—was 62 years old, and the oldest coach on the Defendant's track and field coaching staff [*Id.*, at 19]. The Plaintiff was the only coach who was not offered a renewed contract under Woods, who was the new head coach at the time [*Id.*]. The Plaintiff was replaced by a 26-year-old African-American man with limited coaching experience [*Id.*]. A week after the Plaintiff was not offered a renewed contract, the Defendant's director of operations, Daniel Schmidt, was terminated [*Id.*, at ¶ 20]. Several weeks later, the Defendant's head cross country coach and assistant track coach, Houston Franks, left for a job at Louisiana State University [*Id.*]. Both Schmidt and Franks are white men [*Id.*].

On or about October 1, 2019, the Plaintiff filed charges of race discrimination and age discrimination with the Equal Employment Opportunity Commission [*Id.*, at ¶ 23; 1-1]. On December 6, 2019, the Plaintiff filed with the EEOC a charge of disability discrimination [1, at ¶ 23; 1-2]. On December 18, 2019, the EEOC issued the Plaintiff a notice of the right to sue on the charges of race discrimination and age discrimination [1-3]. On December 31, 2019, the Plaintiff received his notice of the right to sue on the charge of disability discrimination [1, at 23]. On March 13, 2020, the Plaintiff filed his Complaint in this Court, alleging four causes of action: age discrimination, race discrimination, disability discrimination, and constitutional violations under 42 U.S.C. § 1983 [1]. The Defendant filed both its Answer [8] and its Motion for Partial Dismissal on May 13, 2020 [6]. The Plaintiff filed his Response on August 28, 2020, in which he requested leave from the Court to amend his Complaint [15]. The Defendant filed its Reply [17] on September 4, 2020, in which it opposed the Plaintiff's request to amend his Complaint. The matter is now ready for review.

## II.   Legal Standard

### A. Rule 12(b)(1)

"Rules 12(b)(1) and 12(b)(6) provide distinct grounds for dismissal of a claim for relief. Rule 12(b)(6) applies when a plaintiff 'fail[s] to state a claim upon which relief can be granted.' Rule 12(b)(1) applies to claims over which a federal district court 'lack[s] ... subject-matter jurisdiction.'" *Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol North America, Inc.*, 544 Fed.Appx. 455, 456 (5th Cir. 2013) (*citing* Fed. R. of Civ. P. 12(b)(6) and 12(b)(1), respectively). When considering a Rule 12(b)(1) claim, the Court will first determine whether the defendant is raising a facial attack or a factual attack. *See Cell Science Systems Corporation v. Louisiana Health Service*, 804 Fed.Appx. 260, 263 (5th Cir. 2020). The former merely requires that the Court determine if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction; in such a case, the allegations of the complaint are taken as true. *Id.* The latter, on the other hand, "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* In such a case, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Additionally, in a case in which a factual attack is made against the imposition of federal jurisdiction, "no presumptive truthfulness attaches to the [plaintiff's] jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).

## B. Rule 12(b)(6)

When considering a Rule 12(b)(6) claim, the Court is limited by the allegations in the complaint itself, along with any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). The complaint must contain facts that, if accepted as true, would support a claim for relief that is facially plausible. *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim is facially plausible when the facts underlying the claim allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). Dismissal is warranted when a plaintiff fails to present sufficient facts to support the elements of the causes of actions articulated in the Complaint, and has thereby failed to advance their complaint beyond mere speculation. *Emesowum v. Houston Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (citing *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

## C. Exhaustion of Administrative Remedies

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir.2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir.2006)). "[T]he filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII." *Sanchez v.*

6

*Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir.1970). An administrative charge with the EEOC must specify the underlying claim. *Bouvier v. Northrup Grumman Ship Systems, Inc.*, 350 Fed.Appx. 917, 921 (5th Cir. 2009). The Court will read EEO charges "somewhat broadly" to determine "what EEOC investigations it can reasonably be expected to trigger." *Pacheco*, 448 F.3d at 792. However, a failure to reference retaliation in the charge or alleged any facts that would put the EEOC on notice to investigate retaliation will nullify any claim of retaliation. *Bouvier*, Fed.Appx at 921; *see also Anderson v. Venture Express*, 694 Fed.Appx. 243, 247 (5th Cir. 2017). Moreover, "discrimination and retaliation claims are distinct, and the allegation of one in an EEO charge does not exhaust a plaintiff's remedies as to the other." *Bouvier*, Fed.Appx at 921 (citing *Randel v. U.S. Dep't. of Navy*, 157 F.3d 392, 395 (5th Cir. 1998).

### D. 42 U.S.C. 1983 and State Sovereign Immunity

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1, 1 (1980)). With regard to a claim under Section 1983, state sovereign immunity "extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself." *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143, 2001 WL 185033, at *3 (5th Cir. Feb. 6, 2001); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Ky. v. Graham*, 473 U.S. 159, 166 (1985)). Thus, a claim under Section 1983 against a state official in their official capacity would be barred by the Eleventh Amendment. However, the same cannot be said for a claim against a state official in their individual capacity. *Id.*, at 30–31. "State officers are subject to [Section] 1983 liability for damages in their personal capacities ... even when the conduct in question

relates to their official duties." *Arizonans for Official English*, 520 U.S. at 69 n. 24 (citing *Hafer*, 502 U.S. at 25–31). The Fifth Circuit has established that Section 1983 claims against state officers are subject to a heightened pleading requirement, in that a plaintiff must assert "claims of specific conduct and actions giving rise to a Constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996).

### III. Legal Analysis and Application

In their Motion for Partial Dismissal, the Defendant presents three arguments [6]. Firstly, it argues that the Plaintiff's age discrimination, disability discrimination, and Section 1983 claims should be dismissed because of the Defendant's immunity under the Eleventh Amendment [*Id.*, at ¶ 1]. The Defendant next argues that the Plaintiff's Section 1983 claim should be dismissed because the Defendant is not considered a "person" as the term is used in Section 1983 [*Id.*, at ¶ 2]. The Plaintiff concedes that the Defendant has not waived—and is thus still protected by—its immunity under the Eleventh Amendment [15, at ¶ 1]. The Plaintiff further concedes that the Defendant is not considered a "person" for the purposes of Section 1983 claims [*Id.*, at ¶ 2]. Thus, the Court finds that dismissal is warranted, and grants the Defendant's Motion for Partial Dismissal as to these claims.

Finally, the Defendant argues that, should the Plaintiff's Complaint be interpreted to include a claim for retaliation, this claim should be dismissed (1) because the Plaintiff would be unable to establish a causal connection between a protected activity and an adverse employment action and (2) because the Plaintiff failed to include such a claim in his Charges of Discrimination with the EEOC and has thus failed to exhaust his administrative remedies as to this claim [6, at ¶ 3]. The Court agrees with this latter point. In the case *sub judice*, the Plaintiff has failed to exhaust his administrative remedies with regard to retaliation, as he failed to check

8

the relevant box in either of his EEOC Charges or allege sufficient facts within these documents to put the EEOC on notice to investigate the issue of retaliation. Moreover, the Plaintiff has failed to articulate any reason why he may fall under an exception to this rule. In light of these failings, the Court finds that the Plaintiff's retaliation claim is inadequate, and therefore grants the Defendant's Motion for Partial Dismissal as to this issue.

Finally, the Court notes that the Plaintiff made a request for leave to amend his Complaint in his Response to the Defendant's motion, to include named individuals employed by the Defendant as co-Defendants in this case [15, at ¶ 4]. The Court notes that the Uniform Local Rules require both that any request for relief be in the form of a motion (Local Rule 7(b)) and that a proposed amended complaint be submitted with such a motion (Local Rule 15). Should the Plaintiff wish to amend his Complaint, once he files a motion seeking leave of Court to do so, along with providing a proposed amended pleading, the Court will consider any such motion.

### IV. Conclusion

In sum, the Defendant's Motion for Partial Dismissal [6] is GRANTED with respect to the Plaintiff's age discrimination, disability discrimination, and Section 1983 claims, due to the Defendant's state sovereign immunity under the Eleventh Amendment and because the Defendant does not qualify as a "person" for the purposes of Section 1983. Likewise, the Defendant's Motion is also GRANTED with respect to the Plaintiff's retaliation claim because of the Plaintiff's failure to exhaust his administrative remedies. This leaves the Plaintiff's claim for race discrimination under Title VII as the only remaining claim against the Defendant Mississippi State University. Additionally, the Plaintiff is DIRECTED to file a motion seeking leave of Court to amend his Complaint, should he seek such relief.

An order in accordance with this opinion will issue on this day.

THIS, the 30th of March, 2021.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE